# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1173

_____

United States of America

*Plaintiff - Appellee*

v.

Troy Alan Lawrence

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: January 13, 2017
Filed: April 6, 2017
[Unpublished]

_____

Before WOLLMAN, MURPHY, and MELLOY, Circuit Judges.

_____

PER CURIAM.

A jury convicted Troy Alan Lawrence of conspiracy to distribute and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), and 846, and attempted obstruction of justice, in violation of 18 U.S.C. §§ 2 and 1512(b)(1), (b)(2)(A), and (b)(2)(C). The district

court[1] sentenced Lawrence to 262 months' imprisonment. Lawrence appeals, arguing that the evidence was insufficient to support his drug convictions and that the court imposed a substantively unreasonable sentence. We affirm.

In an appeal from the denial of a Rule 29 motion for judgment of acquittal, "[w]e review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Keys, 721 F.3d 512, 518-19 (8th Cir. 2013) (citation omitted). We will reverse "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. at 519. To convict Lawrence of conspiracy to distribute methamphetamine, the government had to show that there was a conspiracy, *i.e.*, an agreement to distribute the drugs, that Lawrence knew of the conspiracy, and that he intentionally joined the conspiracy. See id. To convict Lawrence of possession with intent to distribute methamphetamine, the government had to show that he knowingly possessed the methamphetamine and that he intended to distribute some or all of it. See United States v. Thompson, 686 F.3d 575, 583 (8th Cir. 2012).

Kevin Ridler testified at trial that he had been distributing methamphetamine obtained from Lawrence's brother, Martin Lawrence (Martin), for one to two years. Ridler further testified that Lawrence accompanied Martin on two occasions during which Ridler obtained methamphetamine from Martin and that Martin made no effort to conceal the drug transactions from Lawrence. Linn County, Iowa, deputies testified that Lawrence was present when they executed a search warrant at Martin's residence. That search resulted in the recovery of drug-packaging materials, cash, and drug paraphernalia. Garfield Rackley, who cared for Martin's children when Martin traveled to Omaha to obtain methamphetamine and who was compensated

---

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

with drugs and money, testified that he was present when Martin supplied methamphetamine to Lawrence. Rackley also testified that Martin was reluctant to provide drugs to Lawrence at the time because Lawrence continued to "mess[] up money."

Deputy Chad LeMense testified that he had stopped Lawrence for a traffic violation in July 2014 and recovered nine individually wrapped packets of methamphetamine from underneath the front passenger seat of Lawrence's vehicle. In Deputy LeMense's experience, the quantity and packaging of this methamphetamine was consistent with redistribution and not with personal use. Following Lawrence's involvement in a traffic accident in September 2014, officers searched his vehicle and recovered 23 grams of 99% pure methamphetamine, latex gloves, new plastic bags, and a digital scale hidden inside a stuffed animal. Officers also recovered 4.83 grams of methamphetamine in seven individually wrapped packets, as well as $877 in cash from Lawrence's person. Although the vehicle was registered in Martin's name, Ridler testified that he had seen Lawrence driving the vehicle on prior occasions, and Lawrence's long-time girlfriend, Carrie Maskewit, testified that the vehicle belonged to Lawrence. Special Agent Joshua Lupkes testified that, in his experience, the quantity of methamphetamine recovered, as well as the presence of drug-packaging materials, latex gloves, and a digital scale, was consistent with distribution and not with personal use.

Ms. Maskewit also testified that Martin traveled to Omaha to obtain methamphetamine, that she had witnessed Martin return from Omaha with gallon-sized bags half filled with the drug, that Martin fronted distribution quantities of methamphetamine to Lawrence, that she had witnessed Lawrence and Martin repackaging methamphetamine into individual packets for distribution, and that Lawrence distributed the fronted methamphetamine in 1-gram to 3.5-gram quantities. Maskewit also testified that she had delivered drugs and collected drug proceeds on Lawrence's behalf and at his direction. Maskewit admitted to being a daily user of

methamphetamine for many years, but she also stated that she was not under the influence of methamphetamine at the time of her testimony.

It belabors the obvious to say that the foregoing evidence was sufficient to show that Lawrence had entered into a conspiracy to distribute methamphetamine. See United States v. Cabrera, 116 F.3d 1243, 1245 (8th Cir. 1997) (noting that proof of an express agreement is not required; circumstantial evidence showing a "tacit understanding" between conspirators is sufficient). The twice-discovered distribution quantities of methamphetamine, some of which was packaged for individual sale, together with the drug-packaging materials, latex gloves, and digital scale, give the lie to any contention that Lawrence had no connection to the conspiracy. See, e.g., United States v. Moya, 690 F.3d 944, 949 (8th Cir. 2012) (noting that the government may prove a conspiracy's existence "by direct or circumstantial evidence," so long as it offers enough evidence to prove a defendant's connection to the conspiracy beyond a reasonable doubt).

The evidence was also sufficient to show that Lawrence possessed methamphetamine with the intent to distribute. Possession may be actual or constructive, and an intent to distribute may be inferred from the possession of a large quantity of drugs. See id. at 950; see also United States v. Fetters, 698 F.3d 653, 657 (8th Cir. 2012) ("Drug quantity and purity level, drug paraphernalia, prior sales, and the presence of cash . . . support an inference of intent to distribute."). Lawrence's argument that the fact that he was not the registered owner of the traffic-accident vehicle disproves any claim that he constructively possessed the methamphetamine recovered therefrom is belied by the evidence of his dominion or control over the vehicle. See, e.g., United States v. Serrano-Lopez, 366 F.3d 628, 634-36 (8th Cir. 2004). Lawrence referred to the vehicle as his own at the scene of the accident, several of his tools were located in the vehicle, Ridler testified that he had seen Lawrence driving the vehicle on multiple occasions, and Maskewit testified that the vehicle belonged to him.

-4-

Lawrence further asserts that the evidence was insufficient to support his drug convictions because it consisted largely of Maskewit's testimony, which was not credible in light of her long-term and ongoing methamphetamine abuse. It was for the jury to assess the credibility of the witnesses, an assessment that is "virtually unreviewable on appeal." Keys, 721 F.3d at 519-20 (citation omitted). The jury heard evidence of Maskewit's history of drug use; was able to observe her demeanor, her appearance, and the coherence of her testimony at trial; and apparently chose to credit her testimony.

Viewing the evidence in the light most favorable to the government and accepting all reasonable inferences therefrom that support the verdict, we conclude that the evidence was sufficient for a reasonable jury to find Lawrence guilty beyond a reasonable doubt of conspiring to distribute methamphetamine and possessing methamphetamine with intent to distribute. See id. at 518-19.

Finally, Lawrence challenges his sentence, arguing that the district court placed excessive weight on his criminal history, ignored other relevant 18 U.S.C. § 3553(a) sentencing factors, and imposed a substantively unreasonable sentence. "When assessing substantive reasonableness, we consider the totality of the circumstances at sentencing, and we review for abuse of discretion only." United States v. Diaz-Pellegaud, 666 F.3d 492, 501 (8th Cir. 2012). "A sentence is substantively unreasonable if the district court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." Id. (citation omitted). A district court's decision to assign relatively greater weight to certain aggravating factors than to mitigating factors is well within the "wide latitude" given to sentencing courts in weighing the § 3553(a) sentencing factors. United States v. Wilcox, 666 F.3d 1154, 1157 (8th Cir. 2012); see also United States v. Coleman, 635 F.3d 380, 383 (8th Cir. 2011) (noting that a district court may vary from an advisory Guidelines range based on a policy

disagreement, but it is not required to do so).  The district court addressed the § 3553(a) factors, including the nature and circumstances of Lawrence's offense, his family situation, and issues related to his methamphetamine use.  See United States v. Keating, 579 F.3d 891, 893 (8th Cir. 2009) (noting that when the district court hears argument about specific § 3553(a) factors, we may presume it considered those factors; court "need not recite each factor").  The court noted in particular that Lawrence was "a serial recidivist offender" with a "terrible" criminal history.  The court's decision to give this factor considerable weight and to give other mitigating factors less weight does not warrant reversal.  It will be "the unusual case when [we] reverse a district court sentence . . . as substantively unreasonable." United States v. Feemster, 572 F.3d 455, 464 (8th Cir. 2009) (en banc).  This is not such a case.

The convictions and the sentence are affirmed.

_____